**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3455-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AARON ENIX,

    Defendant-Appellant.

_____

Submitted May 7, 2026 – Decided July 29, 2026

Before Judges Marczyk and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-04-0267.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Anthony J. Vecchio, Designated Counsel, on the brief).

Wayne Mello, Hudson County Prosecutor, attorney for respondent (Patrick F. Galdieri, II, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Aaron Enix appeals from a March 27, 2024 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

In November 2016, Jersey City Police Department officers responded to reports of shots fired on Claremont Avenue. They discovered Rashay Washington lying in a pool of blood on a stoop, shot sixteen times. Washington twice told the officers defendant and Davon Cooper shot him and ran south on Clerk Street. A pedestrian also reported seeing two men wearing burgundy clothing running away from the scene down Clerk Street.

Within two minutes of the first report of gunfire, two police officers walked down Clerk Street and encountered defendant and Cooper, who were wearing burgundy clothing. During the subsequent canvass of the area, officers recovered sixteen spent shell casings and two semi-automatic weapons with empty magazines.

Washington died the following month as a result of his injuries. A Hudson County Grand Jury returned an indictment charging defendant and Cooper with first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and :11-3(a)(1) (count one); first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2) (count two);

A-3455-23

second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) (counts three and four); and second-degree possession of a handgun without a license, N.J.S.A. 2C:39-5(b)(1) (counts five and six).

Defendant and Cooper were tried together before a jury. Washington's identification of them as his assailants was admitted as a dying declaration. The State also showed surveillance footage from six different area cameras, which was authenticated and narrated by a Jersey City sergeant. The sergeant obtained camera video from three different vantage points: one angle captured the shooting; another depicted two individuals running on Claremont Avenue; and the third showed those individuals running and then walking on Clerk Street. In addition to playing the videos individually during trial, the prosecutor showed the jury a compilation of the six videos during summation. Defense counsel did not object to the sergeant's testimony, the admission of the six videos into evidence, or the compilation video.

Defendant was found guilty of counts two, four, and six. A few days after the verdict, one of the jurors telephoned defense counsel and told him he did not "agree with the verdict." Upon realizing he was speaking with a juror, counsel halted the conversation, suggested the juror contact the judge, and informed the judge and counsel about the call.

3

The juror then contacted the judge's chambers, told the judge's secretary he was "not happy with the verdict," and asked to speak with the judge to determine what could be done about it. After the judge conferenced with counsel, none of the attorneys believed any further action was necessary. The judge concluded there was no reason to interview the juror about the deliberative process because there was "not even a hint" of juror misconduct.

At sentencing, the court merged count six into count four and sentenced defendant to a fifty-five-year prison term subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, on count two and a concurrent ten-year prison term with a five-year parole ineligibility term pursuant to the Graves Act, N.J.S.A. 2C:43-6(c), on count four. Defendant appealed the conviction and sentence, challenging the admission of Washington's identification, the sergeant's narration of the surveillance video, the judge's handling of the juror's phone call, and the imposition of a fifty-five-year term.

We rejected these points of error and affirmed the conviction, but because the sentencing judge incorrectly merged count six into four and failed to merge count four into count two, we remanded for resentencing. State v. Enix, No. A-2664-18 (App. Div. Mar. 21, 2022) (slip op. at 2). The Supreme Court denied

A-3455-23

defendant's petition for certification. State v. Enix, 252 N.J. 79 (2022). In September 2022, defendant was resentenced in accordance with our opinion.

Defendant filed a timely PCR petition alleging ineffective assistance of trial counsel. In addition to other arguments not relevant to this appeal, defendant contended counsel was ineffective for failing to object to the State's introduction of the compilation video, which was "highly prejudicial," and for failing to seek a remedy when the juror "came forward to reveal [i]nformation regarding possible improper [j]uror conduct."

After considering argument, the PCR judge denied the petition without an evidentiary hearing in a March 27, 2024 order, accompanied by a written opinion. With regard to the compilation video, the judge found defendant failed to demonstrate counsel's performance was constitutionally deficient because counsel's failure to raise an unsuccessful legal argument did not constitute ineffective assistance. The judge determined defendant's claims regarding the juror issue were barred by Rule 3:22-5 and, even if they were not, they likewise failed to establish counsel's performance was substandard.

II.

On appeal, defendant raises the following issues for our consideration:

> I. THE PCR COURT ERRED IN FINDING THAT TRIAL COUNSEL WAS NOT INEFFECTIVE FOR

FAILING TO OBJECT TO THE SURVEILLANCE VIDEO COMPILATION.

II.     THE PCR COURT ERRED IN FINDING THAT TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO REQUEST A POST-VERDICT HEARING REGARDING THE CONCERNS RAISED BY [THE] JUROR . . . .

III.     THE PCR COURT ERRED IN NOT HOLDING AN EVIDENTIARY HEARING WHERE DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

To succeed on a claim of ineffective assistance of counsel, a defendant must establish by a preponderance of the evidence both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). State v. Gaitan, 209 N.J. 339, 349-50 (2012). First, a "defendant must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. A defendant must demonstrate "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. Because the Constitution requires "reasonably effective assistance," an attorney's performance may not be attacked unless it was not "'within the range of competence demanded of attorneys in criminal cases'" and instead "fell below

6

an objective standard of reasonableness." Id. at 687-88 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

When assessing the first Strickland prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689. A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Under the second Strickland prong, a defendant must "affirmatively prove" with "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Strickland, 466 U.S. at 693-94). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid. (quoting Strickland, 466 U.S. at 694).

Because the PCR court denied the petition without an evidentiary hearing, we review the order de novo. State v. Harris, 181 N.J. 391, 421 (2004). We

7

also review the decision to deny the petition without an evidentiary hearing for abuse of discretion. State v. Preciose, 129 N.J. 451, 462 (1992).

Taking defendant's claims in turn, we first address his arguments regarding the compilation video. N.J.R.E. 801(e) defines a writing as "pictures, drawings, photographs, symbols, sounds, or combinations thereof . . . set down or recorded by . . . photographing, . . . mechanical or electronic recording, or by any other means, and preserved in a perceptible form." "Since a videotape falls within the definition of a 'writing' under N.J.R.E. 801(e), a videotape containing relevant evidence is 'generally admissible' if properly authenticated." State v. Loftin, 287 N.J. Super. 76, 98 (App. Div. 1996) (quoting State v. Wilson, 135 N.J. 4, 16-17 (1994)).

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must present evidence sufficient to support a finding that the item is what its proponent claims." N.J.R.E. 901. "Authentication of a videotape is much like that of a photograph, that is, testimony must establish that the videotape is an accurate reproduction of that which it purports to represent and the reproduction is of the scene at the time the incident took place." Loftin, 287 N.J. Super. at 98. "However, the burden of establishing a prima facie showing of authenticity 'was not designed to be onerous.'" State v.

Marroccelli, 448 N.J. Super. 349, 364 (App. Div. 2017) (quoting State v. Hannah, 448 N.J. Super. 78, 89 (App. Div. 2016)). "The rule does not require absolute certainty or conclusive proof. The proponent of the evidence is only required to make a prima facie showing of authenticity." State v. Mays, 321 N.J. Super. 619, 628 (App. Div. 1999).

Defendant claims trial counsel was ineffective for failing to object to the video compilation played by the State during its closing argument.[1] He contends the video was inadmissible because his and Cooper's faces are not visible, the footage is blurry, three of the six videos lack date and time stamps, and one video has a different date and time than that of the incident. Thus, defendant argues, the composite video lacked authentication and reliability.

In rejecting this claim, the PCR judge explained:

> The State presented surveillance footage to the jury that depicted three different vantage points of the shooting and the shooters running away from the scene afterwards. [The s]ergeant . . . took the stand in order to authenticate the videos. Though he was not present at the time of the shooting, his testimony was sufficient to authenticate the videos by proving they were what the State claimed, and to provide context to the jur[ors] of what they were viewing. The footage was shown in sequential order so that the jury could understand the chronological order of events in the State's case, and

---

[1] Defendant relies on an unpublished decision of this court, which is not binding on us. R. 1:36-3.

[the s]ergeant . . . testified in order to further contextualize.

Having had the benefit of viewing the video compilation, we are likewise unpersuaded counsel's lack of objection constituted ineffective assistance. The sergeant testified where the six surveillance cameras were located and how he extracted the video from each one. Regarding the time discrepancy in one of the videos, he explained that video surveillance system "was a day and an hour fast." Defendant does not contend the admission of the individual videos into evidence was improper and instead rests his claim on the State's use of the compilation video. As the PCR judge found, the compilation video simply "stitched together" the surveillance videos, which had been admitted into evidence, to show the sequence of the shooting and the perpetrators fleeing the scene down two streets. Therefore, any objection to the compilation video would have been unsuccessful.

Turning to defendant's arguments regarding the juror, he contends trial counsel was ineffective for failing to request a post-verdict hearing. He acknowledges, as he must, our determination there was "no error, let alone plain error" in the trial judge's decision not to conduct a post-verdict hearing. As we explained, there was no good cause to do so:

10

Critically, the juror provided no indication whatsoever that outside information was considered by the jurors, that racial prejudice factored into the jury's deliberations, or that any other impropriety occurred. He provided no specifics of any juror misconduct and did not allege the jury was infected by racial animus. Moreover, while the juror was the only African-American on a jury where two African-Americans were tried for killing another African-American, the juror agreed to convict [defendant]. Speculating that racial prejudice infected the jury is simply too attenuated a supposition to meet the good cause standard under Rule 1:16-1. Our case law requires more than an unfounded suspicion, or one based on more than a tangential inference. While racial animus can play a part in jury deliberations, in this instance there is no indication that it did. The mere unsubstantiated possibility of racial animus does not trigger a post-verdict juror voir dire under Rule 1:16-1.

[Enix, slip op. at 22-23.]

As a threshold issue, the PCR judge found this claim was barred under Rule 3:22-5, which precludes a petitioner from asserting any claim for relief previously adjudicated on the merits, "whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule . . . or in any appeal taken from such proceedings." Defendant's direct appeal challenged the trial judge's determination not to hold a post-verdict hearing. His PCR petition recast that contention as a claim of ineffective assistance of counsel, which was not adjudicated in his direct appeal.

Therefore, we conclude defendant's petition on this point was not procedurally barred.

Nevertheless, the PCR judge correctly concluded the petition failed to establish counsel's performance was deficient because, given our holding on direct appeal, counsel's request for a post-verdict hearing "would have been an unsuccessful legal argument." A defendant claiming ineffective assistance of counsel based on the failure to object to evidence must show the objection would have been sustained. "The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel." State v. Worlock, 117 N.J. 596, 625 (1990) (citing Strickland, 466 U.S. at 688). Thus, trial counsel's failure to object to the compilation video did not fall below the constitutional standard of reasonable counsel.

Because defendant did not demonstrate a prima facie claim for relief, material issues of disputed fact, or that an evidentiary hearing was necessary, the denial of his request for a hearing was not an abuse of discretion. R. 3:22-10(b); see Preciose, 129 N.J. at 462-63.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M. C. Hanley

Clerk of the Appellate Division

A-3455-23